UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Trinene Davis, Shirley Weaver, Regina Moore, and Michael Ayers,<br>    *Plaintiffs*,<br><br>*v.*<br><br>Lesley Mara, Lisa Flowers-Murphy, Jeannette Perez, Brett Rayford, and Jeanne Gavey,<br>    *Defendants*. | Civil No. 3:07cv493 (JBA)<br><br><br><br>November 21, 2008 |

**RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. # 39]**

Plaintiffs Trinene Davis, Shirley Weaver, Regina Moore, and Michael Ayers (collectively, "Plaintiffs"), all of whom were employed at the Connecticut Juvenile Training School, brought suit against Defendants, all of them employees of the Connecticut Department of Children and Families ("DCF"), alleging that Defendants subjected them to racially discriminatory treatment in discipline, supervision, and promotion, as well as a racially discriminatory hostile work environment, in violation of Title VII and 42 U.S.C. § 1983 and, through that statute, the United States Constitution. Defendants have moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(5), for insufficiency of service of process, and 12(b)(2), for lack of personal jurisdiction.

**I.    Background**

Plaintiffs brought suit on March 29, 2007, and filed an amended complaint on January 30, 2008, suing Defendants "as individuals acting under the color of law." (Am. Compl. [Doc. # 29] ¶ 4.)

Each Defendant avers that he or she "was never personally served with a copy of the Summons and Complaint . . . either in hand or at [his or her] abode," that he or she "never received any summons or complaint in the mail with a request to waive service," and that he or she "never designated the State of Connecticut, Office of the Attorney General or Gregory T. D'Auria to be my agent to accept service of process for me in my individual capacity." (Mara Aff. at ¶¶ 3–5; Rayford Aff. at ¶¶ 3–5; Perez Aff. at ¶¶ 3–5; Gavey Aff. at ¶¶ 3–5; Flower Aff. at ¶¶ 3–5.) Mr. D'Auria confirmed that he is the designee within the Office of the Attorney General to receive service of process for employees of the State of Connecticut "sued in their *official* capacities," but that "[t]he Attorney General's Office does not accept service for state employees sued in their *individual* capacities, unless authorized by the employee," and that none of the Defendants authorized him "to accept service for them in their individual capacities." (D'Auria Aff. at ¶ 3, 5 (emphases added).)

Despite the fact that Defendants never authorized the Office of the Attorney General to accept service on their behalf in their individual capacities, a Connecticut State Marshal left the summons and complaint with Mr. D'Auria at the Office of the Attorney General for each Defendant on April 4, 2007. (*See* Summons Returned Executed on each Defendant [Docs. ## 12–16]; D'Auria Aff. at ¶ 4.) The summonses were returned executed and were docketed on May 18, 2007, approximately two months prior to the expiration of the 120-day period for service of process specified in Federal Rule of Civil Procedure 4(m) following

2

filing of the complaint.[1] One week later, on May 25, 2007, counsel for all parties signed and submitted a joint Rule 26(f) Report [Doc. # 11]. That Report stated explicitly that "[p]ersonal jurisdiction is contested" (Rule 26(f) Report at ¶ II.B), and, under "Defenses and other claims . . . of Defendant(s)," Defendants contended that "Plaintiffs have failed to serve the named defendants; therefore, there is no in personam jurisdiction" (*Id.* at ¶ III.B).

## II. Standards

### A. Service of Process

Rule 4(e) describes how an "Individual Within a Judicial District of the United States" may be served. Specifically, that Rule provides that service of a summons is properly effectuated by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode . . . ; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e) (paragraph breaks omitted).

The parties agree on the applicability of Rule 4(e)(1). They dispute, however, which "state law for serving a summons" applies here. Defendants cite Conn. Gen. Stat. § 52-57(a), while Plaintiffs rely on § 52-64. Plaintiffs conceded at oral argument that they have not complied with the service of process described under § 52-57(a).

---

[1] Because Plaintiffs filed their original complaint on March 29, 2007, the 120-day period expired on July 27, 2007.

B.  **Personal Jurisdiction**

Defendants also move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction over them. The burden is on Plaintiffs to establish that personal jurisdiction lies. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) ("On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.").

Lack of personal jurisdiction and insufficiency of process provide two different but interrelated grounds for dismissal. In particular, adequate service of process is a prerequisite for a court's exercise of personal jurisdiction: "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); *accord Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."); *see also* Fed. R. Civ. P. 4(k)(1)(A) ("[s]erving a summons . . . establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]").

III.  **Discussion**

A.  **Service of Process**

Section 52-57(a) of the Connecticut General Statutes provides that "[e]xcept as

4

otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." By contrast, § 52-64 provides that

> Service of civil process in any civil action or proceeding maintainable against or in any appeal authorized from the actions of, or service of any foreign attachment or garnishment authorized against, the state or against any institution, board, commission, department or administrative tribunal thereof, or against any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as such, may be made by a proper officer [on the state Attorney General].

Plaintiffs argue that because § 52-64 covers service of process "in *any* civil action," it "must include cases [against state officials] in the[ir] individual as well as official capacit[ies]." (Pls.' Obj. Defs.' Mot. Dismiss [Doc. # 44] ("Pls.' Obj.") at 5 (emphasis in Pls.' Obj.).)

While § 52-64 does refer to service "in any civil action," Plaintiffs' conclusion that such words indicate that the statute is therefore "all-encompassing" (Pls.' Obj. at 5) is incorrect because other portions of the statute's text constrain its scope. In particular, the statute's plain text limits its applicability to suits "against . . . the state . . . or against any officer . . . of the state . . . *as such*." § 52-64 (emphasis added). Moreover, § 52-64 is captioned "Service in action against state." While the phrase "in any civil action" alone may not constrain § 52-64's scope, the statutory title and the words "as such" clearly limit this form of service to suits where a state officer is sued in her capacity as an "officer . . . of the state," that is, where she is sued in her official capacity such that the suit is against the State

5

itself, rather than in her capacity as an individual citizen. *Cf. Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself.") (citations omitted). Plaintiffs thus misread § 52-64 as applying to state employees in *all* capacities (*see* Pls.' Obj. at 2, 3) rather than only to the statutorily denominated circumstances where employees-defendants are sued in their official capacity.

By contrast, § 52-57(a) governs how summons "in any civil action" "shall" be served "[e]xcept as otherwise provided." Because § 52-64 does not "provide" for service in suits against state employees sued in their individual capacities, § 52-57(a) governs such suits instead. Therefore, from the plain text of these statutes, the Court concludes that when a plaintiff sues a state employee in her individual capacity, the plaintiff must serve process on the defendant pursuant to § 52-57(a) and not § 52-64.[2]

The Court's conclusion comports with the construction of Connecticut law by the

---

[2] The Court's conclusion that in suits against state employees in their individual capacities process must be served in accordance with § 52-57(a), and that service under § 52-64 does not suffice, does *not* mean that in suits against state employees in their official capacities, service must comply with § 52-64. Given the mandatory language in § 52-57(a) ("process in any civil action *shall* be served") together with the permissive language in § 52-64 ("process in any civil action . . . *may* be made"), these statutes suggest that where a plaintiff sues a state employee in the defendant's official capacity, service under either statute would suffice. This outcome is also consistent with Federal Rule of Civil Procedure 4(e)(2)(A) & (B). Because Plaintiffs in this case have sued Defendants in their individual capacities, the question of what service suffices in suits against state employees in their official capacities is not before this Court.

Second Circuit and various state courts. The Second Circuit explained that "[w]ith respect to an individual who is an officer or employee of the State but is not sued as such, Connecticut law requires that service be made" pursuant to § 52-57(a). *Bogle-Assegai v. Conn.*, 470 F.3d 498, 507 (2d Cir. 2006); *accord Eiden v. McCarthy*, 531 F. Supp. 2d 333, 344 (D. Conn. 2008) ("[s]ervice on [a] defendant . . . through the Attorney General . . . is insufficient to subject her to suit in her individual capacity") (quoting *Burgos v. Dep't of Children & Families*, 83 F. Supp. 2d 313, 316 (D. Conn. 2000)) (alterations in *Eiden*). In *Canday v. Lantz* a Connecticut Superior Court explained that "[t]he attorney general's power to accept service of process is a narrowly defined exception to the rule established in § 52-57. As such, a suit against [state officials] as individuals requires service of process in accordance with § 52-57." *Canday*, 2008 WL 224015, *2, 2008 Conn. Super. LEXIS 36, *6–*7 (Conn. Super. Ct. Jan. 2, 2008). *See also Reitzer v. Board of Trustees of State Colleges*, 477 A.2d 129, 134, 2 Conn. App. 196, 203–04 (Conn. App. 1984) (holding in suit against state officers in their official capacities that Superior Court's dismissal on ground that defendants were served under § 52-64 but not individually was "error" because § 52-64 governs suits against state officers in their official capacities); *Smith v. Francis*, 2008 WL 642973, *2, 2008 Conn. Super. LEXIS 409, *4–*5 (Conn. Super. Ct. Feb. 22, 2008) (concluding, on basis of service of process having been effectuated under § 52-64 rather than § 52-57, that "the plaintiff has sued the defendant only in his official capacity, not as an individual"); *Sienkiewicz v. Ragaglia*, 2007 WL 1121329, *3, 2007 Conn. Super. LEXIS 834, *10–*11 (Apr. 3, 2007)

7

(concluding, in partial reliance on fact that service complied only with § 52-64, that suit was against state officers in their official capacities only).

Notwithstanding the plain meaning of the statutes as well as the express statements in *Bogle-Assegai*, Plaintiffs argue that the Connecticut Supreme Court has never definitively held that § 52-64 does not govern individual-capacity service on state employees, and therefore this Court should certify to the Connecticut Supreme Court the question of whether the scope of § 52-64 includes such suits. (Pls.' Obj. at 4.)

This Court has the discretion to certify a question of law to the Connecticut Supreme Court "if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." Conn. Gen. Stat. § 51-199b(d); *see also Lopez v. Smiley*, 375 F. Supp. 2d 19, 26 (D. Conn. 2005). Even though the Court "may ordinarily interpret ambiguous state statutes using the normal rules of statutory interpretation, even in the absence of controlling state authority," certification may be appropriate if other "factors strongly suggest that we defer to the Connecticut Supreme Court." *Sealed v. Sealed*, 332 F.3d 51, 59 (2d Cir. 2003) (certifying questions regarding scope of DCF authority to decide when to remove children "in imminent risk of physical harm" from parents' control without parents' consent). While the list of factors in *Sealed v. Sealed* is not exhaustive of considerations a court may use, it provides helpful guidance. These factors include: (1) whether "Connecticut has a compelling interest" in the issue presented by the case; (2) whether the statutory provision at issue

8

"forms only one part of a detailed administrative scheme" in an area of law "in which the federal courts have little familiarity or expertise"; and (3) whether the "question of statutory interpretation implicates the weighing of policy concerns," especially if such policy concerns are expressed in the statutory scheme. *Id.*

Here, while the answer to the question of whether § 52-64 or § 52-57(a) governs proper service in suits against state officers in their individual capacities is determinative of Defendants' Motion to Dismiss, § 52-64 is unambiguous in its limitation to official capacity service, and therefore there is no need to certify the question to the Connecticut Supreme Court. Moreover, examination of the second and third factors counsels against certification. Federal courts have sufficient familiarity and expertise regarding both service of process and distinctions between suits against governmental employees in their individual and official capacities, and the statutes at issue here, unlike those at issue in *Sealed v. Sealed*, do not implicate policy considerations best left to the State's determination. Unlike issues of state control over children and families, which is specific to states, service-of-process issues implicate no complicated or uniquely state policy questions.

Therefore, this Court declines to certify any question to the Connecticut Supreme Court, and concludes that Plaintiffs were required to serve process in the form prescribed by § 52-57(a) because they brought suit against Defendants in their individual capacities. Because Plaintiffs' service of process failed to comply with § 52-57(a), such service was

9

insufficient, and Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(5) must be granted.

### B.     Personal Jurisdiction

Because effective service of process on Defendants is a prerequisite to the Court's exercise of personal jurisdiction over them, the insufficiency of service of process on Defendants means the Court lacks personal jurisdiction over Defendants. *See, e.g.*, *Kirkendall v. Univ. of Conn. Health Ctr.*, 205 F.3d 1323 (Table), 2000 WL 232071, *1, 2000 U.S. App. LEXIS 1252, *3–*4 (2d Cir. Jan. 31, 2000) (concluding that "the District Court did not have personal jurisdiction over the individual defendants in their individual capacities" because a plaintiff suing Connecticut state officials in their individual capacities served process on the defendants at the Attorney General's office pursuant to § 52-64 instead of in person or at the defendants' usual place of abode pursuant to § 52-57(a)). Therefore, Defendants' Motion to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction must be granted.

### C.     Notice to Plaintiffs of Defective Service

In the alternative, Plaintiffs argue that Defendants' motion should be denied because Defendants failed to provide Plaintiffs with adequate notice that service was insufficient prior to filing their Motion to Dismiss. In particular, they claim that "at no time before February 7, 2008, more than six months after the expiration of the 120-day period, did Defendants give any notice of their intent to challenge personal jurisdiction and service."

(Pls.' Obj. at 7.) Plaintiffs cite decontextualized language from *Santos v. State Farm Fire and Cas. Co.*, 902 F.2d 1092 (2d Cir. 1990)[3] as articulating an "unambiguously clear" rule "that a defendant who has notice of defective service must promptly notify the plaintiff, informally if not formally, that a jurisdictional claim will be made about service, so that plaintiff may timely rectify the situation." (Pls.' Obj. at 6.) Plaintiffs argue that, like the defendant in *Santos*, Defendants here "lay in wait until the service period and possibly various limitations period [*sic*] have [*sic*] passed to spring the claim." (*Id.* at 7.)

*Santos* is not applicable here. Under Rule 12(b), "[a] motion asserting any" defense within that subsection "must be made before pleading if a responsive pleading is allowed." In *Santos*, because the defendant sought to dismiss for insufficiency of service after having

---

[3] In *Santos*, the Second Circuit vacated and remanded a case in which the district court had dismissed a plaintiff's complaint for insufficiency of process where the defendant had immediately answered the complaint and then waited two years to raise the insufficiency of process defense. Plaintiffs recite the following language from that case:
> Here State Farm did nothing to alert Santos promptly that its lack-of-jurisdiction claim was in fact a contention that service of process was insufficient. Its attorneys made no attempt to communicate to Santos informally in 1985 that they were not authorized to accept process for State Farm. State Farm did not promptly make a motion to vindicate its claimed defense; its first mention of insufficient service was in the spring of 1987. Its May 1987 motion, brought nearly two years after the ineffective service, was made well after the limitations period had expired. A defendant cannot justly be allowed to lie in wait, masking by misnomer its contention that service of process has been insufficient, and then obtain a dismissal on that ground only after the statute of limitations has run, thereby depriving the plaintiff of the opportunity to cure the service defect.

*Santos*, 902 F.2d at 1096. (*See also* Pls.' Obj. at 6–7 (quoting this portion of *Santos*).)

11

answered the plaintiff's complaint, the Second Circuit found that the defendant had waived that defense. *Santos*, 902 F.2d at 1095. Here, and in accordance with Rule 12(b), Defendants have not answered Plaintiffs' complaint; instead, they await this Court's ruling on their Motion to Dismiss.[4]

Plaintiffs' argument that Defendants were obligated to inform Plaintiffs of their intention to move to dismiss for insufficiency of process finds no support in the Federal Rules or the law of this Circuit. The Federal Rules deem some defenses waived, including those based on insufficiency of process and lack of personal jurisdiction, if the defendant seeking to raise them has failed to do so either by motion or in a responsive pleading. Fed. R. Civ. P. 12(h). No Rule specifies any duty of a defendant to notify a plaintiff of its intention to raise either of these defenses. No case cited in, or citing, *Santos*, stands for the proposition advanced by Plaintiffs that a defendant has a duty to give notice of service deficiencies. A defendant moving to dismiss under Rule 12(b)(5) only has to satisfy the requirement that "[a]n objection to service of process 'must be specific and must point out in what manner the plaintiff has failed to satisfy the requirements of the service provision

---

[4] Moreover, *Santos* does not stand for the proposition for which Plaintiffs cite it. The language in *Santos* on which Plaintiffs rely—stating that the defendant did not give timely notice to the plaintiff that it planned to raise insufficiency of process as a defense—is part of the court's explanation of why it refused in that case to read Rule 12(b) liberally to allow the defendant to raise its defense after having waived it. *See Santos*, 902 F.2d at 1095 ("[s]uch liberal treatment [of the defendant] was not, however, warranted in the present case"). *Santos* does not stand for a principle of law or construction of Rule 12(b) that requires a defendant to notify a plaintiff that it will raise the insufficiency-of-process defense.

utilized.'" *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 312 (S.D.N.Y. 2008) (citations omitted). Defendants have satisfied that burden by arguing that § 52-57(a) dictated the service of process for these Defendants and averring that such service was not performed.

In addition, Plaintiffs' argument that they did not have notice of Defendants' intention to raise as defenses both insufficiency of process and lack of personal jurisdiction is belied by the record. Plaintiffs' counsel's statements that "[he] had no notice, formal or informal, that Defendants intended to challenge personal jurisdiction in this matter" (Miniter Aff. ¶ 3) are clearly erroneous. The attorneys' joint Rule 26(f) Report, filed almost eleven months before Defendants moved to dismiss for insufficient service of process and lack of personal jurisdiction, noted that Defendants contested both personal jurisdiction and sufficiency of service of process, contradicting the averments of Plaintiffs' counsel's affidavit that "[he] had no notice, formal or informal," of Defendants' intent to challenge personal jurisdiction.[5]

Finally, while the Court is empowered under Rule 4(m) to extend "for an appropriate period" the 120-day period "if the plaintiff shows good cause for the failure" to properly serve process on the defendant, Fed. R. Civ. P. 4(m), Plaintiffs here have neither sought an

---

[5] Plaintiffs' counsel stated at oral argument that in light of the close proximity in time between when the summons on the Attorney General were returned to the Court (May 18, 2007) and when of the Rule 26(f) Report was filed (May 25, 2007), he misinterpreted Defendants' statements in the Rule 26(f) Report as reflecting Defendants' belief that there had been an absence of any service on them.

extension of time, nor demonstrated good cause for such an extension. Instead, Plaintiffs have chosen to contest the legal basis of Defendants' motion.

**III.    Conclusion**

For the reasons set forth above, Defendants' Motion to Dismiss [Doc. # 39] is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

      /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 21st day of November, 2008.